Charles COGBURN *v.* Mary Sue WOLFENBARGER
and Laura Cogburn

CA 03-735                                      148 S.W.3d 787

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered February 25, 2004

*John W. Yeargan, Jr.*, for appellant.

*William H. McKimm*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Charles Cogburn and appellee Mary Sue Wolfenbarger are the son and daughter of Laura Cogburn. Ms. Wolfenbarger filed a petition for guardianship of the person and estate of Laura Cogburn. Mr. Cogburn answered, requesting that the petition be denied. Thereafter, an attorney ad litem was appointed to represent Ms. Cogburn.

After a temporary hearing, the trial court found sufficient grounds to find Ms. Cogburn incompetent, and a hearing on a permanent guardianship was scheduled. Subsequent to the final hearing, the trial court entered an order denying Ms. Wolfenbarger's petition for guardianship of the person, but appointing Ms. Wolfenbarger as permanent guardian of the estate.

Mr. Cogburn now appeals, arguing that the trial court erred in granting Ms. Wolfenbarger's petition for guardianship of the

estate.[1] For reversal, he argues that the trial court's decision was clearly erroneous, and that it was impermissibly based on medical evaluations that failed to satisfy the requirements of the Arkansas Code.

Ms. Wolfenbarger testified at the permanent guardianship hearing, which was held on March 7, 2003. She stated that Ms. Cogburn gave appellant's son $35,000 to pay off debts, and subsequently gave him another $30,000.

Ms. Cogburn testified that she does not want a guardian. She stated that she is able to take care of her home and garden, pays her bills, and drives to the grocery store. Ms. Cogburn maintained that she gave money to her grandson for hot checks, and that he promised to pay her back.

On cross-examination, Ms. Cogburn stated that she gave her grandson about $3,000, and then agreed that it is possible the amount was $35,000. Ms. Cogburn could not remember giving him any more money after that, and further stated she did not remember "who got the money when my bank account went from $109,000 to $55,000."

Two medical opinions were admitted into evidence in this case. The appellee offered a letter written by Dr. Matthew D. Hulsey, which states:

> I, Matthew D. Hulsey, D.O., Board Certified Family Practitioner, examined Laura Cogburn on April 5, 2002. During this examination I found Ms. Cogburn to be a pleasant 90-year-old white female that complains of short-term memory loss. Physical examination found her to be in good physical health. A cognitive screening test was performed which was suggestive of an impairment of cognition. At this time I do not feel that Ms. Cogburn is able to make reasonable or informed decisions regarding her affairs. At this time I do not feel that her condition is reversible.

The appellant offered the following letter by Dr. William E. Beebe:

---

[1] The appellee argues that Mr. Cogburn has no standing to bring this appeal because he was not a party below. We disagree. Mr. Cogburn was given notice of the hearing for the appointment of a guardian as required by Ark. Code Ann. § 28-65-207(b)(5) (Supp. 1999). He filed an answer to appellee's petition and appeared at both the temporary and permanent hearings to contest the guardianship. Mr. Cogburn was an interested party to the action below and has standing to appeal from the trial court's order.

I examined Mrs. Laura Cogburn on April 19, 2002. Mrs. Cogburn exhibits signs of senile dementia and I have diagnosed her with this disease process. I believe Mrs. Cogburn is not incapacitated and can voice her desires and wishes coherently.

█ In bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). On appeal, Mr. Cogburn argues that the trial court's decision to grant the petition for guardianship of the estate was clearly erroneous.

More specifically, Mr. Cogburn argues that certain statutory requirements were not satisfied, and that this requires reversal. Arkansas Code Annotated section 28-65-211(b)(1) (1987) provides:

> In determining the incapacity of a person for whom a guardian is sought to be appointed for cause other than minority, disappearance, or detention, or confinement by a foreign power, the court shall require that the evidence of incapacity include the oral testimony or sworn written statement of one (1) or more qualified professionals, whose qualifications shall be set forth in their testimony or written statements.

Mr. Cogburn asserts that there was no compliance with the above provision because there was a lack of oral testimony or a sworn written statement from a qualified professional. Mr. Cogburn also cites Ark. Code Ann. § 28-65-212 (Supp. 1999), which provides, in pertinent part:

> (a) A professional evaluation shall be performed prior to the court hearing on any petition for guardianship except when appointment is being made because of minority, disappearance, detention, or confinement by a foreign power, or pursuant to § 28-65-218. The evaluation shall be performed by a professional or professionals with expertise appropriate for the respondent's alleged incapacity.
>
> (b) The evaluation shall include the following:
>
> (1) The respondent's medical and physical condition;
>
> (2) His adaptive behavior;
>
> (3) His intellectual functioning;

(4) Recommendation as to the specific areas for which assistance is needed and the least restrictive alternatives available.

(c)(1) If no professional evaluations performed within the last six (6) months are available, the court will order an independent evaluation.

(2) If the petition is granted, the cost of the independent evaluation will be borne by the estate of the incapacitated person. In the event the petition is denied, the costs will be borne by the petitioner.

Mr. Cogburn notes that the evaluations by the two doctors in this case were not performed within six months of the final hearing. He further argues that all of the elements of section 28-65-212(b) were not satisfied because, while each medical opinion included evaluations concerning Ms. Cogburn's medical and physical condition, and her intellectual functioning, neither included an evaluation of her adaptive behavior. Mr. Cogburn cites *In the Matter of Bailey*, 299 Ark. 352, 771 S.W.2d 779 (1989), where the supreme court held that compliance with section 28-65-212(b) is mandatory, and that the professional evaluation of an alleged incompetent must include the four specific findings.

We agree that the trial court's finding of incapacity was clearly erroneous. It is undisputed that there was no oral testimony or sworn written statement of a qualified professional as required by Ark. Code Ann. § 28-65-211(b)(1). Moreover, as was the case in *In the Matter of Bailey, supra*, the medical evaluations did not establish findings with respect to adaptive behavior. In that case our supreme court gave the following analysis of Ark. Code Ann. § 28-65-212(b):

> The statute sets forth four (4) very specific findings which *"shall"* be included in the evaluation. The word "shall" when used in a statute means that the legislature intended mandatory compliance with the statute unless such an interpretation would lead to absurd results. *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986). We cannot say that mandatory compliance with this statute would lead to absurd results. Therefore, the professional evaluations should have included the four specific findings.

299 Ark. at 354, 771 S.W.2d at 781.

■ Ms. Wolfenbarger argues that the arguments being raised on appeal were not raised below and are thus not preserved for review. While it is true that these specific arguments were not addressed to the trial court at the final hearing, this was unnecessary. In *In the Matter of Bailey, supra*, the supreme court held that where the finding of incapacity was based in part upon mandatory professional evaluations that did not satisfy the statutory requirements of Ark. Code Ann. § 28-65-212(b), the finding of incapacity was clearly erroneous. The finding of the trial court in the instant case was in part based on the medical evaluations of Drs. Hulsey and Beebe, and because neither of these evaluations satisfied all of the statutory requirements, the finding of the trial court was clearly erroneous. It was not incumbent upon appellant to ask the trial court to consider the relevant statutes that must be satisfied prior to a finding of incapacity. Furthermore, Rule 52(b)(2) of the Arkansas Rules of Civil Procedure provides that, in a bench trial, the sufficiency of the evidence to support the trial court's findings may be raised whether or not any objection was made below.

■■ Our review in probate cases is de novo, just as it is in equity cases. *In re Estate of Jones*, 317 Ark. 606, 879 S.W.2d 433 (1994). But the rule is well established that while we have the power to decide equity cases de novo on the record before us, in appropriate cases we also have the authority to remand such cases for further action. *Warren v. Tuminello*, 49 Ark. App. 126, 898 S.W.2d 60 (1995). Where a case has been once heard upon the evidence or there has been a fair opportunity to present it, we would not usually remand a case solely to give either party an opportunity to produce other evidence. *Moore v. City of Blytheville*, 1 Ark. App. 35, 612 S.W.2d 327 (1981). This rule is not imperative, and this court has the power, in furtherance of justice, to remand any case in equity for further proceedings, including hearing additional testimony. *Id.* In this case, in the furtherance of justice, we think it best to remand for further proceedings on appellees' petition for guardianship of the estate.

Reversed and remanded.

Bird, Griffen, Crabtree, and Roaf, JJ., agree.

Baker, J., dissents.

Karen R. Baker, Judge, dissenting. I agree that this case must be reversed because it is undisputed that there was no

oral testimony or sworn written statement of a qualified professional as required by Ark. Code Ann. § 28-65-211(b)(1) (Repl. 2004). While I agree that this failure renders the trial court's finding of incapacity clearly erroneous, I disagree as to the disposition of the case. Rather than remand for further proceedings, I would simply reverse. Because appellees failed to prove their case, and there are no further proceedings to be conducted.

The majority finds, and I agree, that the Petition for Guardianship should have been denied. If the court had done as it should have and denied the petition, that denial would have concluded the litigation. The majority is remanding this case to afford appellee the opportunity to produce evidence sufficient to comply with the statutory requirements. This is not our usual disposition of a case once the case has been heard or had a fair opportunity to be presented. *See Moore v. City of Blytheville*, 1 Ark. App. 35, 612 S.W.2d 327 (1981).

I see nothing in the facts of this case that persuades me that we should depart from our customary practice. Therefore, I would not remand the case for further proceedings.

Agree in part; dissent in part.